[Sac. No. 5548. In Bank. Jan. 29, 1943.]

NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA, Appellant.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and James E. Sabine and Adrian A. Kragen, Deputies Attorney General, for Appellant.

C. W. Durbrow and Harry H. McElroy for Respondent.

GIBSON, C. J.—Defendant appeals from a judgment for plaintiff in this action brought to recover taxes paid under protest under the Retail Sales Tax Act. (Stats. 1933, p. 2599; Deering's Gen. Laws [1935], Act 8493; see Rev. and Tax. Code, part I, Stats. 1941, ch. 36.)

Plaintiff, a California corporation, is a railroad common carrier. Its capital stock is wholly owned by the Southern Pacific Company, also a common carrier engaged in operating a system of related railroads and truck lines, of which plaintiff is one and the Pacific Motor Trucking Company, also a California corporation, is another. These companies are operated as separate entities, though some of the officers are common to the three companies. It has long been the practice of the Southern Pacific Company and its several subsidiary

transportation companies to transfer surplus and retired rolling stock or operating equipment from one company to another at depreciated value. During the year 1935 plaintiff on five occasions transferred varying numbers of passenger coaches, totalling thirteen in all, to the Southern Pacific Company. In April, 1936, the Southern Pacific Company approved an authority for expenditure of $78,832.14 for these thirteen coaches. It was recited in the "authority" that the accounting for the transaction was to be merely a bookkeeping transaction. A bill collectible was issued by plaintiff to the Southern Pacific Company, which item was eventually applied against an outstanding indebtedness due from plaintiff to the Southern Pacific Company.

In 1936 plaintiff similarly transferred two passenger coaches and one baggage car to the Southern Pacific Company at a depreciated value of $290. In 1937 plaintiff transferred to the Pacific Motor Trucking Company, also a subsidiary of Southern Pacific Company, a truck-trailer at the depreciated value of $1,096.21. The same general bookkeeping procedure was followed with respect to these latter transfers as is detailed above with respect to the transfer of the thirteen coaches.

In addition to its transportation operations, plaintiff engaged in selling articles of tangible personal property at retail and held a permit therefor. Such sales have been made generally from its "Stores Department" and included various types of railroad materials and supplies. Plaintiff has filed returns of gross receipts from such sales since the effective date of the act, copies of the returns appearing in the record now before us. By way of illustration, the amounts of total taxable sales shown on these returns for the years 1935, 1936 and 1937 are, respectively, $36,639.24, $13,636.20 and $8,678.70.

Plaintiff made no sales or transfers of rolling stock during the period covered by its several returns except a sale of flat cars to the California Barrel Company, a sale of a locomotive to Hammond-Little River Lumber Company, both for cash, and the transactions with the Southern Pacific Company and Pacific Motor Trucking Company here involved. The sales to the first two named companies were reported by plaintiff as taxable sales and the tax paid thereon. Plaintiff did not consider the transactions involving the several

transfers of railroad coaches to the Southern Pacific Company and the truck-trailer to the Pacific Motor Trucking Company, representing a depreciated transfer value of $80,218.35, as being transactions subject to the Retail Sales Tax Act, and it did not therefore report them on any filed return. The defendant levied an additional assessment covering these latter transactions based on the amounts shown on plaintiff's records as the price received for such equipment. Plaintiff paid the additional tax under protest and in this action recovered judgment for its refund. Defendant appealed.

At all times material to this litigation, the taxing act provided that ''For the privilege of selling tangible personal property at retail a tax is hereby imposed upon retailers . . . at the rate of 3 per cent of the gross receipts. of any such retailer from the sale of all tangible personal property sold at retail in this State. . . . '' (§ 3.) The act defines a sale as ''any transfer of title or possession, or both, . . . in any manner or by any means whatsoever. . . . '' (§ 2(b).) A ''retail sale'' is defined in section 2(c) as ''a sale to a consumer or to any person for any purpose other than for resale. . . . '' Section 2(e) defines ''Retailer'' as ''every person engaged in the business of making sales at retail.'' Section 2(f) describes ''gross receipts'' as ''the total amount of the sale . . . price . . . of the retail sales of retailers, including . . . all receipts, cash, credits and property of any kind or nature. . . . ''

Plaintiff's theory with respect to the asserted nontaxability of its several transfers to the Southern Pacific Company and to Pacific Motor Trucking Company of surplus or retired rolling stock is that such transfers were not a part of, nor incidental to, the retail sales business carried on by its ''Stores Department,'' but instead represented occasional and casual sales which were incidental to and ''a part of a separate business, to-wit, the common carriage of freight and passengers.'' The defendant taxing body, on the other hand, contends that a ''department'' of a business or company does not make a sale but that the company itself makes the sale. It urges that the taxpayer by departmentalizing its business may not escape the tax on certain sales while conceding the taxability of and paying the tax on other sales. Defendant also argues that plaintiff's sales of surplus or retired rolling stock were not occasional and casual but repre-

sented a definite and repeated course of conduct on its part.

This case is not distinguishable from *Bigsby* v. *Johnson*, 18 Cal.2d 860 [118 P.2d 289]. In that case the taxpayer was a printer who, in addition to selling printing at retail, sold a single used printing apparatus described as a Monomelt pot and its accessories. The board levied a tax measured by the gross receipts from that sale. The taxpayer there urged that "since the sale of used equipment was merely incidental to his principal business and was made in order to salvage the investment upon machinery that he could no longer use, it was not the kind of sale that the legislature intended to tax under the retail sales tax statutes." In rejecting the contention this court held that "The tax is imposed upon retailers for the privilege of doing a retail sales business . . . and the measure of the tax is the gross receipts of any such retailer from the sale of 'all tangible personal property sold at retail . . . ' The plaintiff is a retailer. He sold the personal property in question at retail as a part of his business operations, and the plain language of the act requires the inclusion of the gross receipts therefrom in the measure of the tax. He can claim no exemption merely by virtue of the fact that the sale of used printing equipment was not the kind of retail sale ordinarily made by him."

Plaintiff herein applied for a permit to engage in the sale of personal property at retail stating in its application that "applicant is a common carrier of persons and property but incident to such business it sells articles of tangible personal property, which sales may constitute it a retail dealer within the meaning of the California Retail Sales Tax Law . . . " A permit was accordingly issued to it. Under it plaintiff was free to make sales of any kind at retail and the record discloses that over the years it did make an appreciable amount of retail sales for which it made returns and paid the tax due thereon. Plaintiff was therefore a "retailer," defined in section 2(e), as "every person engaged in the business of making sales at retail." It concedes that sales made by its "Stores Department" are subject to the provisions of the taxing act. It contends, however, that the sales of rolling stock here involved were unrelated to its other sales and represented casual and isolated sales wholly incidental to its railway business as distinguished from its retail sales business. The trial court erred in accepting this

contention. While for reasons considered desirable plaintiff corporation may departmentalize its business, it cannot by such process set up for tax purposes a distinction between the types or kinds of sales made by it where the effect would be to cause some of its sales to escape the tax aimed at all of such sales. Specific sales of a retailer cannot be segregated from the bulk of its sales and treated separately as isolated or occasional sales.

But, even if we were to assume that plaintiff, as urged by it, is engaged in two separate kinds of business, viz., retail sales business and transportation business and that the transfers or sales of rolling stock here involved were connected with or related to the latter business and were entirely foreign to its retail business for which it is licensed, it would avail plaintiff nothing. The number, scope and character of the transfers of rolling stock would still serve to bring them within the purview of the taxing act. Even if we were to treat the transfers of the thirteen coaches, made from time to time in 1935, to the Southern Pacific Company as one transaction, the transfer of the three coaches to the same company in 1936 as one transaction, the transfer of the truck-trailer to Pacific Motor Trucking Company in 1937 as one transaction, and the transfer of twenty flat cars to California Barrel Company and the transfer of a locomotive to Hammond-Little River Lumber Company as two transactions, these transfers represent five sales at a total price approximating $100,000.

Such transfers, and others of a similar nature to follow, may not be regarded as casual or isolated sales. They were "retail sales" within the meaning of the act in that they entailed the transfer of "title or possession" to a consumer for a "purpose other than resale." (§ 2(b), (c), and (e).)
And, in our opinion, the sale price received by plaintiff from the Southern Pacific Company and the Pacific Motor Company constituted "gross receipts" within the statutory definition thereof which includes money, cash, *credits* or property of any kind or nature. (§ 2(f).) The procedure adopted with respect to these transactions was for plaintiff to execute an authority to retire and to "sell" to the Southern Pacific Company or a subsidiary thereof a specified number and kind of rolling stock. The net amount to be credited to plaintiff was set forth. The transferee or purchaser then

executed an ''Authority for Expenditure'' which specified the ''net cost'' to it. Plaintiff then would execute an ''Inter-Company Bill Collectible'' against the transferee or purchaser for said amount, described therein ''as the depreciated value as of date of transfer of the following passenger coaches *sold* to the Southern Pacific Company.'' The latter company then issued an ''Inter-Company Voucher Payable'' in favor of plaintiff. It is stipulated that the amounts set forth in these vouchers payable were not intended to be settled in cash but were to be credited to the open account of plaintiff and the transferee or purchaser. Under these circumstances, the parties performed all acts essential to the consummation of a sale and the buyer gave the seller credit on its books for the amount of the purchase price. The buyer and seller were operated as separate corporate entities and the transactions therefore come within the statutory definition of ''gross receipts.''

The case of *Southern California Edison Co.* v. *State Board of Equalization*, 220 Cal. 420 [31 P.2d 384], relied on by plaintiff, is distinguishable from the present case. It involved section 14 of article XIII of the Constitution which section, contrary to the act now before us, did not delineate the type of gross receipts included within the term as there used. The statute involved here expressly includes ''credits'' as gross receipts. Moreover, the cited case involved a taxation of the *parent* company on its gross proceeds which, under the statute and decisions, were held to include the gross proceeds of the subsidiary, thus requiring a disregard of the corporate entity in the case of inter-corporate payments. There is a distinction between taxing a subsidiary for the privilege of doing an act and measuring the tax by the amounts it receives or is entitled to receive, which is the present case, and taxing a parent company, as in the cited case, on its gross receipts and including, in a tax levied on the parent company, amounts credited by the parent for bookkeeping purposes to the subsidiary for acts done by the subsidiary for the parent. In the present case the subsidiary, operated as a separate and distinct corporate entity despite complete stock ownership by the parent corporation, is paying for the privilege which it (the subsidiary) has exercised. It is stated in *Superior Coal Co.* v. *Department of Finance*, 377 Ill. 282 [36 N.E.2d 354], that ''As a general rule a corporation and its

stockholders are deemed separate entities, and this is true with respect to tax problems. (*New Colonial Ice Co.* v. *Helvering,* 292 U.S. 435 [54 S.Ct. 788, 78 L.Ed. 1348].) Ownership of capital stock in one corporation by another does not, itself, create an identity of corporate interest between the two companies, nor render the stockholding company the owner of the property of the other, nor create the relation of principal and agent, representative, or alter ego between the two. (*United States* v. *Delaware L. & W. R. R. Co.,* 238 U.S. 516 [35 S.Ct. 873, 59 L.Ed. 1438]. . . .) Nor does the identity of officers of two corporations establish identity of the corporations . . . ''

The judgment is reversed with directions to the trial court to amend its findings and to enter judgment in conformity with the views herein expressed.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Spence, J. pro tem., concurred.

Traynor, J., did not participate herein.