[Civ. Nos. 7169, 7170.   Third Dist.   Oct. 31, 1945.]

LOS ANGELES CITY HIGH SCHOOL DISTRICT, Appellant, v. STATE BOARD OF EQUALIZATION, Respondent.

(Two Cases.)

J. H. O'Connor, County Counsel, and Wm. E. Lamoreaux, Deputy County Counsel, for Appellant.

Robert W. Kenny, Attorney General, Daniel N. Stevens and John L. Nourse, Deputies Attorney General, for Respondent.

PEEK, J.—These are consolidated appeals from judgments in favor of respondent State Board of Equalization in actions brought by appellant school districts to recover the amount of taxes paid under protest by virtue of assessments made by said board under the California Retail Sales Tax Act. (Stats. 1933, p. 2599, Deering's Gen. Laws, Act 8493.)

A summary of the stipulated facts upon which the cause

was submitted shows that the transactions in each case covered a period of three years from April 1, 1939, to March 31, 1942, and consisted of sales of tangible personal property, to wit, buildings and improvements on real property theretofore acquired by the said districts for school sites, and certain other miscellaneous equipment no longer needed for school purposes. In the case of the high school district, the gross receipts from all the sales amounted to $36,332.83, of which the sum of $15,462.50 represented the sales to consumers which were made the basis of the tax. In the case of the school district, the gross receipts from all sales amounted to $30,818.55, of which the sum of $10,970.40 represented the sales to consumers which were made the basis of the tax. In each case the sales had taken place in ten of the twelve quarterly periods on an average of two to three sales for each quarter.

The trial court concluded that the taxes had been properly assessed against appellants under the authority of said Retail Sales Tax Act, and judgments were accordingly entered for the respondent board.

Upon these appeals it is the contention of appellants that a school district, in making the kind of sales herein involved, is not a retailer nor is it engaged in the business of making sales at retail; that the sales in question were casual and incidental transactions and therefore were without the operation of the taxing statute.

Respondent, on the other hand, contends that where a school district sells tangible personal property to consumers regularly and continuously over a period of several years, such sales come directly within the applicable provisions of said act as construed by the most recent judicial decisions.

The general authority for the levying of the tax in question is found in section 3 of the act (now Rev. & Tax. Code, § 6051), which during the period in question provided as follows:

"For the privilege of selling tangible personal property at retail a tax is hereby imposed upon retailers at the rate of 2½ per cent of the gross receipts of any such retailer from the sale of all tangible personal property sold at retail in this State. . . ."

The effect of such section is to apply a stated percentage tax upon the gross receipts of a retailer from sales of tangible personal property.

Section 2(e) of said act (now Rev. & Tax. Code, § 6015) defines "retailer" to include "Every person engaged in the business of making sales at retail or in the business of making retail sales at auction of tangible personal property owned by such person or others . . ."; while "person" is defined in section 2(a) (now Rev. & Tax. Code, § 6005) to include "this State, any county, city and county, municipality, district, or other political subdivision thereof . . ."; and lastly, "business" is defined in section 2(d) (now Rev. & Tax. Code, § 6013) as any "activity . . . with the object of gain, benefit, or advantage, either direct or indirect."

From the quoted sections it would appear that the appellant districts, which admittedly are political subdivisions of this state, are "persons" as that term is used in the act; that the sales of the property were "business" and an "activity" for "gain, benefit, or advantage, either direct or indirect" as those terms likewise are used in the act, and that the term "business" is not used in the commercial sense attributed to it by appellants but must be interpreted in the light of the statutory definition set forth in the act.

We therefore are of the opinion that the position of respondent must be sustained, and that the rules announced and applied by the Supreme Court in the cases of *Bigsby* v. *Johnson,* 18 Cal.2d 860 [118 P.2d 289], *Union League Club* v. *Johnson,* 18 Cal.2d 275 [115 P.2d 425], and *Northwestern Pacific Railroad Co.* v. *State Board of Equalization,* 21 Cal.2d 524 [133 P.2d 400], are decisive of the issues herein presented for determination.

In *Bigsby* v. *Johnson,* it was held that a printer selling printing at retail, who in the course of his business had made a single sale to a consumer of certain used printing equipment, was taxable therefor under the Retail Sales Tax Act, and that he could claim no exemption by reason of the fact that the sale was casual or incidental and not of a kind ordinarily made by him.

In the case of *Union League Club* v. *Johnson,* the court held that, in furnishing food and beverages to members, a bona fide nonprofit social club is engaged in business as a retailer and makes sales at retail, and that it is not necessary that such sales be made for profit to bring them within the purview of the act, it being sufficient that they are made with the object of gain, benefit, or advantage.

In *Northwestern Pacific Railroad Co.* v. *State Board of Equalization,* the corporation held a permit from the board to sell certain articles of personal property through its "Stores Department." In addition to the sales made by that department the corporation sold certain surplus and retired rolling stock and equipment. The court held that the fact that the latter sales were incidental to its main business of transportation and not a part of the sales ordinarily made by its "Stores Department" was immaterial and was insufficient to take such sales out of the operation of the statute; and if the number of such sales was considerable, and the gross receipts therefrom substantial, they could not be regarded as casual or isolated transactions exempt from the imposition of a tax.

Appellants recognize the force of these decisions, but insist that they are inapplicable to a school district whose activities are essentially noncommercial and which could not validly be authorized to conduct a business in the sense in which the taxing statute must be deemed to have defined that term (citing *City of Los Angeles* v. *Lewis,* 175 Cal. 777 [167 P. 390]; *Marin Muni. Water Dist.* v. *Chenu,* 188 Cal. 734 [207 P. 251]). The point which is made is that such a district cannot embark on or engage in a private enterprise for profit.

The Retail Sales Tax Act neither expressly nor by implication purports to confine its operation to private business. As noted in section 2(a) public corporations and political subdivisions of the state specifically have been made subject to the act, with the apparent intention of making the public business of such bodies subject to the provisions thereof.

Nor do the cases so cited by appellants in this connection lead to a contrary conclusion. In *Marin Muni. Water Dist.* v. *Chenu, supra,* the licensing requirements of the Motor Vehicle Act were held to be inapplicable to public corporations and in particular to vehicles used by a municipal water district for the *business* of the district—which within the provisions of that statute the court interpreted as meaning private business. But that act did not, as does the Retail Sales Tax Act, expressly include such public persons within its terms; nor did that statute, as does the tax act, define the word "business" in a manner that can leave no doubt as to its meaning. (*Union League Club* v. *Johnson, supra.*)

In the case of *City of Los Angeles* v. *Lewis, supra,* the

statute under attack authorized a county, without limitation, to manufacture and sell cement to any and every purchaser within or without the county in any quantity desired and without regard to the needs of the local inhabitants or to any other public object. While the court held the enactment invalid, it specifically recognized the existence of a general rule which permits a public corporation or entity to sell its surplus property for the purpose of subserving the interests of its inhabitants (citing Dillon on Municipal Corporations, 5th ed., § 1300; *Clark* v. *City of Los Angeles,* 160 Cal. 30 [116 P. 722] ; *South Pasadena* v. *Pasadena Land & Water Co.,* 152 Cal. 579 [93 P. 490]).

In otherwise attempting to distinguish the Bigsby, Union League Club and Northwestern Pacific Railroad cases, appellants strongly rely on a decision of the Federal Court for the Ninth Circuit, viz., *State Board of Equalization* v. *Boteler* (C.C.A. 9), 131 F.2d 386, 388. There it was held that where a trustee in bankruptcy, in liquidating the business of a wholesale and retail bakery, sells the entire equipment, furniture and fixtures belonging to the bankrupt, such sales are not taxable under the provisions of the California Retail Sales Tax Act, or under 28 U.S.C.A. section 124a which makes such a trustee, when conducting a business, liable for state taxes, and held the rule expressed in the *Bigsby* v. *Johnson* case to be inapplicable.

Without expressing an opinion as to the soundness of the conclusion reached by the court in that case, we agree that the situation presented therein differed materially from the situation which existed in the *Bigsby* v. *Johnson* case just as it differs from the one which confronts us in the case at bar. In the federal case the sale was not made in the course of conducting a business but in the process of putting an end to a business. It must be conceded that such is not the situation in the present case.

We are likewise in accord with the view expressed by respondent that the interpretation of a state statute is for the state courts. (See *Chicago* v. *Fieldcrest Dairies, Inc.,* 316 U.S. 168, 171-173 [62 S.Ct. 986, 86 L.Ed. 1355] ; *Railroad Com. of Texas* v. *Pullman Co.,* 312 U.S. 496, 499-500 [61 S.Ct. 643, 85 L.Ed. 971].) However, since the Circuit Court of Appeals has neither criticized adversely nor disregarded the Bigsby case, and since the decision does not attempt to formulate any general rule of construction, we

see no need for resorting to that principle in holding the Boteler decision inapplicable to the case at bar.

The other federal cases cited by appellants in support of their contention that casual transactions incidental to general activities do not constitute doing business, viz., *Porter* v. *Com. of Int. Rev.* (C.C.A. 9), 130 F.2d 276, and *Fidelity-Bankers' Trust Co.* v. *Helvering*, (U.S.Ct. of Appeals, Dist. Col.) 113 F.2d 14, are likewise without application to the case at bar. These are cases in which the taxpayer was held to be engaged in a business enterprise within the meaning of the applicable provisions of the Internal Revenue Code. *Santee Club* v. *White* (C.C.A. 1), 87 F.2d 5, also cited by appellants, involved a single isolated sale where the test of taxability turned on the question whether the sale was made for profit. As has been seen under the express ruling of our Supreme Court in the Union League case, profit is not a determinative factor under the California Retail Sales Tax Act. In *Dane* v. *Brown* (C.C.A. 1), 70 F.2d 164, it was held that a single isolated act did not constitute the practice of architecture in violation of the licensing law. The court observed generally that such expressions as ''practicing architecture,'' ''engaging in the practice of law,'' ''engaging in business,'' and similar terms, ''contemplate a course of business and not single isolated acts arising from unusual circumstances.'' In the present case, however, we can have no such question, for, as we have said, casual sales are not exempted from the act. But in any event whether the sales involved in the case at bar were made in the course of business or as single isolated acts arising from unusual circumstances appears to find a definite answer in the following language from the opinion in the Northwestern Pacific Railroad case, *supra,* heretofore referred to several times:

''But, even if we were to assume that plaintiff, as urged by it, is engaged in two separate kinds of business, viz., retail sales business and transportation business and that the transfers or sales of rolling stock here involved were connected with or related to the latter business and were entirely foreign to its retail business for which it is licensed, it would avail plaintiff nothing. The number, scope and character of the transfers of rolling stock would still serve to bring them within the purview of the taxing act. Even if we were to treat the transfers of the thirteen coaches, made from

time to time in 1935, to the Southern Pacific Company as one transaction, the transfer of the three coaches to the same company in 1936 as one transaction, the transfer of the truck-trailer to Pacific Motor Trucking Company in 1937 as one transaction, and the transfer of twenty flat cars to California Barrel Company and the transfer of a locomotive to Hammond-Little River Lumber Company as two transactions, these transfers represent five sales at a total price approximating $100,000.

"Such transfers, and others of a similar nature to follow, may not be regarded as casual or isolated sales." (21 Cal.2d 524, 529.)

For the foregoing reasons the judgments are affirmed.

Adams, P. J., and Thompson, J., concurred.