[Civ. No. 16609.   First Dist., Div. Two.   Mar. 19, 1956.]

SUTTER PACKING COMPANY (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION etc., et al., Respondents.

Orrick, Dahlquist, Herrington & Sutcliffe for Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, and Ernest P. Goodman, Deputy Attorney General, for Respondents.

KAUFMAN, J.—Plaintiff appeals from a judgment rendered in favor of defendant in an action for a refund of sales tax. On June 1, 1949, appellant made a sale of all of its furniture, fixtures, machinery and other equipment to a single purchaser for a price of $700,000, subject to sales tax, and it is this tax which appellant sought to recover in the present suit.

The action was tried on a stipulation of facts and no additional evidence was introduced. Sutter, a California corporation, was engaged in the business of processing, packing, selling and distributing canned fruits and vegetables for resale. During the period beginning September 1, 1945, and ending March 31, 1949, appellant made several retail sales of used equipment and various supplies on which sales tax was paid. In the fourth quarter of 1945 it sold all of its equipment for the sum of $264,819.72, paying the sales tax thereon. During the period beginning in August, 1933 and ending March 31, 1949, Sutter held a seller's permit from the State Board of Equalization as required of any person making retail sales. (Rev. & Tax. Code, § 6066.) On April 15, 1949, Sutter obtained a cancellation of its seller's permit to be effective March 31, 1949.

Having decided to discontinue operations on or about March 15, 1949, Sutter entered into negotiations with a non-affiliated company. On March 26, 1949, it transferred its entire inventory of finished goods and goods in process to an affiliated company for a purchase price of $2,799,235.93, receiving a resale certificate therefor. On May 4, 1949, the sale of the equipment, furniture and fixtures to a nonaffiliated company was completed for a consideration of $700,000. The transfer of these assets took place on June 1, 1949. Sutter

does not contend that the assets involved in this latter sale were sold for resale.

The trial court adopted the partial stipulation of facts as findings of fact. It further found that every allegation in the complaint not included in said stipulation or admitted by the answer was untrue. As inferences from the stipulation the court found that Sutter was a retailer at time of the sale here in question; that the sale was one of a series of retail sales made in the period, September 1, 1945, to and including June 1, 1949; that said sale was part of a series of retail sales sufficient in number, scope and character to constitute plaintiff a retailer; that the property involved in the sale was held and used by plaintiff in the course of an activity for which a seller's permit was required.

Appellant contends that it was not a retailer at the time it sold its cannery equipment. Section 6051, Revenue and Taxation Code, imposes a tax for the privilege of selling tangible personal property at retail, and section 6015 of the same code defines a "retailer" as a person "engaged in the business of making sales at retail . . . of tangible personal property owned by the person or others." Appellant admits that it made retail sales of obsolete equipment and incidental supplies prior to March 21, 1949, but contends that it was not a retailer on June 1, 1949, because more than two months earlier it had terminated the business which theretofore had made it a retailer. It is to be noted that it was not appellant's principal business, operating a cannery, which had made it a retailer, for the food processing business is exempt from the sales tax (Rev. & Tax. Code, § 6359). It was the incidental sales of supplies and obsolete equipment for which it had held a seller's permit. In the last quarter of 1948 appellant made 10 retail sales. The last sale (prior to the sale here in question), the sale of an obsolete printing press, had occurred in the first quarter of 1949, the quarter in which it was decided to discontinue business and in which negotiations were begun which culminated in the sales agreement of May 4, 1949, involving furniture, fixtures, machinery, equipment, repair supplies, tools, etc., in the plant. This transfer was completed on June 1, 1949, by delivery of a bill of sale, and the buyer removed the aforesaid equipment from the plant prior to the close of 1949. It will be recalled that inventory of goods in process, finished goods, shipping and packing supplies, had been sold on March 26, 1949, to an affiliated company.

Appellant maintains that the above stipulated facts conclusively establish that it was not on June 1, 1949, engaged in the business of making sales at retail. The agreement was, however, actually made on May 4, 1949, and negotiations leading to the sale had apparently commenced before appellant on April 15, 1949, mailed in its seller's permit for cancellation. These facts would allow the inference which was drawn by the trial court that this sale was part of a series of retail sales made by appellant in the period September 1, 1945, to and including June 1, 1949. ▮ The fact that appellant did not hold a seller's permit at the time that the sale was completed would be of no significance, since if the sale is a retail sale covered by the act, the seller is liable for the tax whether or not he holds a seller's permit.

Appellant contends that the sale of all the remaining assets of a business is distinguishable from the prior retail sales made by it. The series of earlier sales were incidental and a byproduct of its principal, nonretailing, nontaxable operations. They were generally sales of pieces of obsolete equipment, or supplies sold to farmers. The sale of June 1, 1949, was a sale in termination of a business rather than in pursuance of a business. The sales tax, it is argued, is a tax upon the privilege of conducting a retail business. (*Western Lithograph Co.* v. *State Board of Equalization,* 11 Cal.2d 156, 164 [78 P.2d 731, 117 A.L.R. 838]; *National Ice & Cold Storage Co.* v. *Pacific Fruit Express Co.,* 11 Cal.2d 283 [79 P.2d 380]; *Bigsby* v. *Johnson,* 18 Cal.2d 860, 862 [118 P.2d 289].) The federal cases have noted the distinction between cases of retail sales made in the course of conducting a business, and those made in liquidation of a business. (*State Board of Equalization* v. *Boteler,* 131 F.2d 386; *California State Board of Equalization* v. *Goggin,* 191 F.2d 726.) In the Goggin case in which the trustee in bankruptcy had made a sale of certain trucks, the court stated that "the sale was not made in the course of conducting a business but in the process of putting an end to a business." The cases where the tax has been held applicable are those made while the seller was conducting a business. (*Northwestern Pac. R. Co.* v. *State Board of Equalization* (1943), 21 Cal.2d 524 [133 P.2d 400], sale of used rolling stock; *Bigsby* v. *Johnson* (1941), 18 Cal.2d 860 [118 P.2d 289], sale of used printing equipment by printing establishment; *Los Angeles City High Sch. Dist.* v. *State Board of Equalization* (1945), 71 Cal.

App.2d 486 [163 P.2d 45], sales of miscellaneous equipment no longer needed for school purposes.)

While it is true that the cases cited above, decided by the courts of this state, were cases in which the retail sales were all made by sellers still engaged in their principal business activity, none of those cases dealt with the issue now before the court, and shed no light on the problem. As to the views expressed by the federal courts in the cases cited, *supra*, they are not controlling in the state courts. These cases were recently discussed in *Market Street Ry. Co. v. California State Board of Equalization*, 137 Cal.App.2d 87, 99 [290 P.2d 20], the court there stating that "It is possible that these cases can be explained on the theory that the federal courts there involved felt that a trustee in bankruptcy was not a retailer because of his status under federal law. It seems most likely that the federal courts construed the term 'business' in the federal statute in its ordinary commercial sense and not as the California courts have construed the term in the Sales Tax Act. At any rate, even if these cases are contrary to the views herein expressed, this court, as an intermediate state appellate court, is bound in interpreting a state statute to follow the rule laid down by the Supreme Court of this state."

Appellant relies on *Novak v. Redwine*, 89 Ga. 755 [81 S.E.2d 222], a Georgia case wherein the sales tax of that state was held not applicable to the sale of bakery and store fixtures by a person who had ceased operating his bakery business. The court stated that the sole question was whether a casual and isolated sale at retail by a person not engaged in the selling of tangible personal property was taxable. The court concluded that it was not a transaction by a person engaged in the business of buying and selling bakery fixtures and equipment, and therefore not taxable. The cases in this state, however, prior to the amendments of 1947 did not exempt occasional sales made at retail. In the Georgia case the sale was a single, isolated sale, whereas in the present case the seller had admittedly been a retailer of used equipment since 1945.

Appellant urges that the recently decided Market Street Railway case, *supra*, supports its position. That case involved the taxability of more than 900 sales between 1933 and 1948. One of these sales was that of all of its operating properties on September 29, 1944, without any interruption

in its business theretofore. At that time the occasional sales exemption was not in the amendment. The court pointed out that in 1947 section 6367 was amended so as to exempt from the tax occasional sales of personal property, and that although Market contended that this was merely a codification of existing law, this was not true, since "these changes were intended to and did modify the definition of 'business' set forth in *Bigsby* v. *Johnson*, 18 Cal.2d 860 [118 P.2d 289], and *Los Angeles City H. Sch. Dist.* v. *State Board of Equalization*, 71 Cal.App.2d 486 [163 P.2d 45]." Therefore, Market being a retailer at the time, the sale of all of its operating properties being prior to the 1947 amendment, could not be exempt. Appellant points out that the cited case stated that the term "business" requires that the seller engage in more than one isolated sale, that the number, scope and character of the transfer are to be considered, and asserts that its single sale of machinery and fixtures was insufficient to put it in the business of making sales at retail. This is true, if it be conceded that this sale must be viewed without reference to the preceding series of retail sales.

However, the stipulated facts show that the decision to sell was made about March 15, 1949, and that *immediately* after this decision negotiations for the sale which culminated on June 1, 1949, were begun. It may certainly be inferred that Sutter began these negotiations while it was still in both the cannery business and the business of selling used equipment at retail. The fact that it secured the cancellation of its seller's permit some days before it completed those negotiations cannot establish a barrier between this sale and those which were made earlier.

The Market Street Railway case declared that an exemption from taxation must be found in the statute itself, and that if the statue applies to all sales of tangible personal property by a retailer, the courts cannot say that "the statute does not apply to this sale by a retailer because of some undisclosed general 'intent.' "

. The 1947 amendments concerned with exemption of occasional sales exempt the sale of a business when it is property used in an activity for which the seller is required to hold a seller's permit, "when after such transfer the real or ultimate ownership of such property is substantially similar to that which existed before such transfer." (Rev. & Tax. Code, § 6006.5, sub. (b).) In the instant case the prop-

erty was sold to a stranger, hence this exemption does not apply.

Subsection (a) of section 6006.5 provides that an occasional sale includes ''a sale of property not held or used by a seller in the course of an activity for which he is required to hold a seller's permit, provided such sale is not one of a series of sales sufficient in number, scope and character to constitute an activity requiring the holding of a seller's permit.'' The machinery and equipment which was sold, appellant says, had been used in the food processing business, an activity for which a seller's permit was not required. (Rev. & Tax. Code, § 6359.) Appellant maintains that the second condition of section 6006.5, subdivision (a), has also been met, namely, that this sale was not one of a series of sales sufficient in number, scope and character to constitute an activity requiring a seller's permit.

Whether or not the retail sale made here can be considered exempt from the tax, depends finally upon the interpretation of the language ''one of a series of sales sufficient in number, scope and character to constitute an activity requiring a seller's permit.'' The sales prior to the sale here in question undoubtedly required such a permit. While it may be said that Sutter was conducting a side line of selling used equipment and certain other supplies requiring such permit, it is argued that this sale was of an entirely different nature—that it was an isolated transaction, since it was clear that Sutter was not making a business out of selling its business. Appellant refers to the selling of its business as if there was a single sale of its entire operation. However, it had previously sold for a sum of $2,799,235.93, its inventory of goods and packing supplies. The equipment in the sale now under discussion, was situated in a plant leased by appellant. Appellant had begun negotiations to acquire the packing plant from the lessor, when it learned that the prospective purchaser was no longer interested in the entire plant. The machinery and fixtures were purchased and removed from the aforesaid plant by the buyer. It is true that with the exception of the sale of all the equipment in 1945, none of the other sales of used equipment approached the amount of the final sale which was in the sum of $700,000. Between these sales, the largest was that of certain obsolete spinach equipment in the sum of $12,063.69 in the last quarter of 1948. There appears to be nothing, however, inherently

different in the nature of the items sold in the final sale than in the earlier sales of used equipment, although it is true that it was a much larger sale of a greater variety of items. Appellant says that this was truly an occasional sale since the sale of the entire assets could happen only once. However, the same may be said for each smaller item sold. Similar sales might be made, and appellant herein had, in fact, made a similar sale of all of its equipment and machinery in the plant in 1945.

The fact alone that the last sale was made in liquidation of a business is apparently not such a distinction in the nature of the sale as to warrant an exemption if it would otherwise have been considered part of a series of sales sufficient in number, scope and character to constitute an activity requiring a seller's permit and subjecting it to the tax. In the Market Street Railway case, *supra*, it was held that several sales of personal property made between December 29, 1944, and December 31, 1948, in liquidation of Market's nonoperative properties were liable for the sales tax. ▮ This includes some sales made after the 1947 amendments and supports our holding that the fact that the sale is a liquidation sale is not controlling in determining whether a sale is occasional.

We conclude that the trial court was correct in determining that the tax had been validly assessed in the instant case.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 15, 1956.