[L.A. No. 31710. Apr. 19, 1984.]

ONTARIO COMMUNITY FOUNDATION, INC., et al.,
Plaintiffs and Respondents, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Edmond B. Mamer and Richard E. Nielsen, Deputy Attorneys General, for Defendant and Appellant.

Ervin, Cohen & Jessup and Horace N. Freedman for Plaintiffs and Respondents.

OPINION

RICHARDSON, J.*—Defendant, State Board of Equalization (Board), appeals from a judgment in a consolidated action in favor of plaintiffs, Ontario

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

814

Community Foundation, Inc. (Ontario) and National Medical Convalescent Hospital of San Diego, Inc. (NMCH). The judgment awards a refund of sales tax assessed on the transfer of hospital furnishings and equipment made as part of the sale of the total assets of hospitals operated by plaintiffs. We agree that such transfers were "occasional sales" which were exempt from sales tax and affirm the judgment.

The facts are stipulated. Ontario and NMCH respectively operated 99-bed and 39-bed general hospitals in Ontario and Turlock, California. Each plaintiff had a seller's permit issued by the defendant and required by law (Rev. & Tax. Code, § 6066; all further statutory references are to this code) because it (a) operated a food service facility which sold meals to patients and nonpatients, such as hospital visitors and employees, (b) sold miscellaneous personal items from its supply unit, and (c) operated a pharmacy. The food service facility, supply department and pharmacy were all operated at the same location as the hospitals.

During the three years prior to the sale of the hospitals, annual retail sales attributable to the three above mentioned services averaged about 10 percent of the hospitals' annual gross receipts. Of these retail sales, however, the vast majority were pharmacy sales exempt from taxation. (See Cal. Admin. Code, tit. 18, reg. 1591, subd. (a)(1).) Taxable sales amounted to little over 1 percent of each hospital's gross receipts.

The entire assets of Ontario, including the real property on which the hospital was located and the furnishings, machinery and equipment of the hospital, were sold in 1977 for over $1.7 million, of which $292,051 was for tangible personal property. Of the latter amount, $19,120 was allocable to kitchen and dietary equipment.

The sale of the tangible personal property was not reported as a taxable transaction. The Board, however, determined a sales and use tax deficiency of $17,827 on the transaction. Ontario conceded the $1,147 tax levied upon the kitchen and dietary equipment, but challenged the remaining $16,680 by seeking a refund after paying the tax. (See § 6933.) It later conceded another $229.

NMCH sold the entire assets of its hospital in 1977 for over $1.5 million, of which $264,230 was for tangible personal property. Approximately $4,405 of that amount was for kitchen and dietary equipment. Like Ontario, NMCH did not report the sale as a taxable transaction, and the Board determined a $15,854 tax deficiency. NMCH conceded a $264 tax liability,

attributable to the kitchen and dietary equipment, but has challenged assessment of the balance of the tax.

In each instance the plaintiffs paid the taxes under protest and plaintiffs' actions to recover them were consolidated and heard by the court without a jury. The court found that the sales in question were exempt from tax as "occasional sales" (see §§ 6006.5, 6367), and entered judgment for plaintiffs for the disputed sums plus interest.

The California sales tax is imposed upon "retailers" for the privilege of making "retail sales," and the tax is measured by the gross receipts from "retail sales." (§ 6051.) In 1947 the Legislature expressly exempted from such tax an "occasional sale" (§ 6367), which it defined as including: "A sale of property not held or used by a seller in the course of activities for which he is required to hold a seller's permit or permits . . . , provided such sale is not one of a series of sales sufficient in number, scope and character to constitute an activity for which he is required to hold a seller's permit . . . ." (§ 6006.5, subd. (a).)

The hospital equipment and furnishings sold by plaintiff hospitals were used in rendering medical and nursing services. At no time was such personalty directly or indirectly used by the hospitals in the course of activities for which they were required to hold a seller's permit. Nor was the single sale by each hospital of its equipment and furnishings, in connection with the sale of its entire business and the real property upon which it was located, "one of a series" of such sales which independently might require a permit under the statute. Accordingly, each hospital sale at issue here clearly would appear to fall within the statutory definition of a tax-exempt "occasional sale."

In arguing that the sales tax exemption is inapplicable, however, the Board relies upon its regulation withholding the exemption for an otherwise concededly tax-exempt "occasional sale" if the seller is a "unitary business" also engaged in *other* sales which are *not* tax-exempt. (See Cal. Admin. Code, tit. 18, reg. 1595, subd. (a)(3).) The Board seeks to apply the "unitary business" concept to the hospitals here to tax their otherwise tax-exempt sales because such hospitals also were involved minimally in other activities requiring a seller's permit, namely, cafeteria sales to nonpatients and a small, nonexempt portion of their pharmacy and hospital supply sales, representing in the aggregate a minute fraction of the gross income of each hospital. By reason of its regulation, the Board contends that the one-time sale by each institution of all of its hospital equipment and furnishings does not qualify for the statutory tax exemption applicable thereto. It would thus

read the regulation as being contrary to the apparent import of section 6006.5, thereby depriving each plaintiff of a sales tax exemption for an "occasional sale," to wit: a sale of personalty *not* held in the course of activities for which a seller's permit was required, and *not* one of a series of similar sales which independently might require such a permit.

The standard of our review of the Board's "unitary business" regulation is clear. The Legislature has delegated to the Board the duty of enforcing the sales tax law and the authority to prescribe and adopt rules and regulations. (*Action Trailer Sales, Inc.* v. *State Bd. of Equalization* (1975) 54 Cal.App.3d 125, 132 [126 Cal.Rptr. 339]; §§ 7051, 7052.) This delegation is proper even though it confers some degree of discretion on the Board. So long as this discretion is exercised within the scope of the controlling statute, the administrative judgment will not be disturbed by the courts. (*Action Trailer Sales, supra,* 54 Cal.App.3d at p. 132.) In determining the proper interpretation of a statute and the validity of an administrative regulation, the administrative agency's construction is entitled to great weight, and if there appears to be a reasonable basis for it, a court will not substitute its judgment for that of the administrative body. (*Id.,* at p. 133; see *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].)

On the other hand, we have said that "Where a statute empowers an administrative agency to adopt regulations, such regulations 'must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose.' (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 679 . . .; Gov. Code, § 11342.2.) The task of the reviewing court in such a case ' "is to decide whether the [agency] reasonably interpreted the legislative mandate." [Citation.]' (*Credit Ins. Gen. Agents Assn.* v. *Payne* (1976) 16 Cal.3d 651, 657 . . . .) Such a limited scope of review constitutes no judicial interference with the administrative discretion in that aspect of the rulemaking function which requires a high degree of technical skill and expertise. [Citation.] Correspondingly, *there is no agency discretion to promulgate a regulation which is inconsistent with the governing statute.* [¶] We repeat our admonition expressed in *Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 . . .: 'Our function is to inquire into the legality of the regulations, not their wisdom . . . . Administrative regulations that violate acts of the Legislature are void and no protestations that they are merely an exercise of administrative discretion can sanctify them.' Acknowledging that the interpretation of a statute by one charged with its administration was entitled to great weight, we nonetheless affirmed: ' "Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts." [Citations.] *Admin-*

*istrative regulations that alter or amend the statute* or enlarge *or impair its scope are void and courts not only may, but it is their obligation to* [,] *strike down such regulations.' (Id.,* at p. 748.)" *(Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679 [170 Cal.Rptr. 484, 620 P.2d 1032], italics added.)

 In defining a tax-exempt "occasional sale," section 6006.5 does *not* require that such a sale be made by a seller who *otherwise* never has made a taxable sale. The sole focus of the statute is on the nature of the sale under consideration for exemption; while it cannot be one of a series of similar sales, the nonexistence of other, unrelated taxable sales simply is not a condition of exemption from tax under this statute. Rather, the "unitary business" concept of regulation 1595—which purports to *add* this condition for tax exemption—is a creation of the Board, adopted almost 30 years after the enactment of the statutory occasional sale exemption and apparently inspired by an opinion of the Court of Appeal rendered shortly before promulgation of that regulation. (See *Hotel Del Coronado Corp.* v. *State Board of Equalization* (1971) 15 Cal.App.3d 612 [92 Cal.Rptr. 456].) As indicated hereafter *(post,* pp. 820-821), however, that opinion provides no substantial support for the regulation.

Most important, the regulatory restriction imposes upon the availability of a statutory tax exemption conditions which not only are omitted from, but also are at variance with, the statute. Such a regulation must be deemed to "alter or amend the statute" and "impair its scope" (see *Woods, supra,* 28 Cal.3d at p. 679), and is void.

Relying on judicial and administrative interpretation of the sales tax law, the Board purports to find consistency between the regulation and the statute. However, most of these interpretations *preceded* the Legislature's adoption of the statutory exemption *and are based on that factor,* and none of them provides any reasonable support for the regulation.

Thus, in *Bigsby* v. *Johnson* (1941) 18 Cal.2d 860 [118 P.2d 289], we denied a sales tax exemption for an "incidental and casual" sale by a printer of a piece of printing equipment. We noted that plaintiff was a retailer, that he held and sold the equipment as part of his business operations, and that the plain language of the taxing act made the transaction taxable, even though the sale of used printing equipment was not the "kind" of sale ordinarily made by him. *(Id.,* at p. 863.) Most significantly, we observed: *"Our statute creates no exemption covering the situation,* and however forceful may be plaintiff's contention that this type of sale should be exempted from the operation of the statute, such arguments must be directed to the legislature rather than to the courts." *(Ibid.,* italics added.) Several

years later, sections 6006.5 and 6367 were adopted, providing the very statutory exemption lacking in *Bigsby*.

It appears obvious that a case denying a tax exemption because of a lack of statutory authority has little precedential value once the Legislature has explicitly provided such an exemption. Neither can *Bigsby* be used to legitimize the Board's still later adoption of a regulation which continues denial of the exemption.

*N. W. Pac. R. R.* v. *St. Bd. of Equalization* (*Northwestern*) (1943) 21 Cal.2d 524 [133 P.2d 400], also relied upon by the Board, is inapposite both for the same and for another reason. Relying on *Bigsby* there, we denied a railroad company an exemption from sales tax for its sale of rolling stock. We noted that the taxpayer sold tangible personal property at retail and had a permit therefor, and that there was no basis *under the existing law* for distinguishing the occasional sale of its equipment from its normal retail sales simply because the former sales were made through a separate department of the company. (*Id.,* at pp. 528-529.) In *Northwestern,* no statute exempted "occasional sales" from the sales tax. Also relevant to our decision that the sales of rolling stock were taxable were the "number, scope and character of the transfers" of such stock. There were at least five transfers. We observed: "Such transfers, and others of a similar nature to follow, may not be regarded as casual or isolated sales." (*Id.,* at p. 529.) In short, we denied a tax exemption in *Northwestern* primarily because the pertinent statutes provided none. That underlying fact is not obscured by the further circumstance that tax exemption also would have been denied there under the statute *subsequently* enacted because of the *number* of such sales made by the taxpayer. The situation before us differs in both particulars. Here we have both a statutory exemption and a solitary sale. *Northwestern* provides no support for the claim that the Board's regulation—which purports to deny that statutory exemption for one-time sales—is somehow consistent with the statute.

Neither does *Market St. Ry. Co.* v. *Cal. St. Bd. Equal.* (1955) 137 Cal.App.2d 87 [290 P.2d 20], demonstrate the current validity of *Northwestern*'s denial of tax exemption for "occasional sales," as argued by the Board here. The implication of that assertion is that because *Market St.* was decided *after* sections 6006.5 and 6367 were enacted in 1947, its denial of tax exemption to the sales involved there is somehow consistent with those statutes. Yet all 900 sales under consideration in *Market St.* occurred in 1944, *before* the enactment of the statutory exemptions. Not only did the *Market St.* court expressly find that the subsequent exemption statutes were *not* applicable to the sales in question (*id.,* at p. 98), but it also declared

that the statutory exemption represented a clear change in our sales tax law, thus implying that a different result would have obtained if the exemption had been in existence at the time of the sales there involved. (*Ibid.*)

Acknowledging that in the interpretation of the tax statutes "all reasonable doubts must be resolved in favor of the taxpayer [citations]," the *Market St.* court nonetheless observed that "there is no real doubt" about taxability of the transactions in question under the then applicable law. (137 Cal.App.2d at p. 92.) Commencing its analysis with the fundamental principle that "Exemptions from taxation must be found in the statute," the court noted that "as it read in 1944" the taxing statute imposed a tax on all retailers for the privilege of selling tangible personal property at retail; that taxpayer was a "retailer"; and that the ultimate, liquidation sale in September 1944 was a " 'retail sale.' This being so, it follows with almost syllogistic infallibility that this sale was taxable." (*Id.*, at pp. 96-97.) The court particularly noted that "in 1944 the California act had no exemption of casual and occasional sales. In 1947 section 6367 was amended so as to exempt occasional sales of tangible personal property from the tax. Market contends that this was a mere codification of existing law. *This is not so.*" (*Id.*, at p. 98, italics added.)

We thus view *Market St.* as clearly acknowledging that the 1947 statute *changed* the law, creating an exemption where there was none before. The case provides no support for the notion that the Board can adopt a regulation which contravenes the statutory change.

Nor is *Sutter Packing Co.* v. *State Bd. of Equal.* (1956) 139 Cal.App.2d 889 [294 P.2d 1083], more helpful to the Board's position. *Sutter* is the first case we discuss which actually *construed* section 6006.5 to reach its holding. There the taxpayer, a cannery, had a seller's permit for selling used equipment and supplies at retail prior to March 31, 1949. Preparatory to going out of business, the cannery cancelled its retailer's tax permit in April 1949. In June of that year it then sold all of its assets, including furniture, fixtures, machinery and other equipment. In finding the ultimate sale taxable, the *Sutter* court relied on *Market St.*: "The Market Street Railway case declared that an exemption from taxation must be found in the statute itself, and that if the statute applies to all sales of tangible personal property by a retailer, the courts cannot say that 'the statute does not apply to this sale by a retailer because of some undisclosed general "intent." ' " (*Id.*, at p. 894.)

The taxability finding in *Sutter* was based on the status of the liquidation sale as " 'one of a series of sales sufficient in number, scope and character

to constitute an activity requiring the holding of a seller's permit.' " (139 Cal.App.2d at p. 895.) Indeed, the court observed that "it may be said that Sutter was conducting a side line of selling used equipment and certain other supplies requiring such permit," and the fact that the last of such sales eliminated the possibility of future similar sales did not change that fact. (*Ibid.*) Taxability of a sale in such a series is a foregone conclusion under section 6006.5. It is noteworthy that the *Sutter* court clearly implied that the sale *would have been* tax exempt under the first portion of section 6006.5, subdivision (a), because the personalty sold was not held in the course of activities requiring a seller's permit, if not disqualified under the "one of a series" language. (*Ibid.*) *Sutter* provides no basis for the "unitary business" concept of the Board's subsequent regulation which eliminates the exemption for sales which would qualify under *both* portions of the "occasional sale" statute.

The Board's effort to construct from earlier cases a foundation for its adoption of the "unitary business" concept in regulation 1595 culminates in its reliance upon *Hotel Del Coronado Corp.* v. *State Board of Equalization, supra,* 15 Cal.App.3d 612. There, taxpayer had acquired a hotel business in 1960 and, in connection with a major remodeling project, commenced a series of sales of fixtures, furniture and equipment from a "salvage department" which it had established for that purpose, first acquiring the necessary seller's permit. In 1963, taxpayer sold the entire business, including all the tangible personal property used therein. In contesting taxpayer's claim to an exemption from sales tax for the liquidation sale, the Board relied upon the clear language of section 6006.5 denying exempt status *both* to a sale of tangible personal property "used in the course of an activity requiring the holding of a seller's permit" *and* to any sale which was "one of a series of sales" independently requiring such a permit. (*Id.,* at p. 619.)

In denying the exemption the court concentrated on the latter ground. It first cited precedent holding: "the fact alone that the last sale made was made in liquidation of a business is not such a distinction in the nature of the sale as to warrant an exemption if it would otherwise have been considered part of a series of sales sufficient in number, scope and character to constitute an activity requiring a seller's permit and subjecting it to the tax. [Citations.]" (*Ibid.*) Continuing to focus on the serial nature of the taxpayer's sales, the court also observed: "It is not required that the principal business activity of the taxpayer shall involve making retail sales of tangible personal property, if, in fact, the retail sales of tangible personal property made by the taxpayer are sufficient in number, scope and character to make

the taxpayer a retailer under the provisions of the Revenue and Taxation Code. [Citations.]" (*Id.*, at pp. 619-620.)

The court concluded: "In the case at bench, Hotel was engaged in the activity of making numerous sales at retail, and was, therefore, required to hold a retailer's permit. The property which was sold was held in an activity which required the holding of a seller's permit. Since section 6006.5 requires, in order to qualify for an exemption as an occasional sale, that the property sold not be held in an activity which required a seller's permit, the sale here under consideration was not exempt from taxation. Furthermore, the record discloses that the items of capital assets which were sold during the months prior to the sale here under consideration were of the same type of capital assets which were sold in the questioned sale. The prior sales exceeded two in number (§ 6019) which resulted in Hotel being deemed a retailer, thus requiring it to hold a seller's permit. The occasional [sale] exemption is not available if the sale in question was *one of a series of sales* sufficient in number (here, 12 salvage sales . . .), scope and character to require the holding of a seller's permit. Therefore, the occasional sale exemption was not available to Hotel, and the sale in question was properly taxed." (*Id.*, at p. 620, italics added.)

While not without ambiguity, *Hotel Del Coronado* suggests that the operative fact which rendered the occasional sale tax exemption unavailable to the taxpayer there was the serial nature of the 12 salvage sales in which it had been engaged prior to the final liquidation sale. The court's analysis concentrated on that factor; indeed, its statement:—"The property which was sold was held in an activity which required the holding of a seller's permit" (15 Cal.App.3d at p. 620)—may be interpreted as meaning only that engaging in the series of salvage sales itself, culminating in the liquidation sale, was the "activity" which required the permit and rendered the last sale taxable. (See *id.*, at p. 618.) Interpreting that allusion instead as an attempt to tie the final liquidation sale to the taxpayer's unrelated but concededly taxable bar and restaurant sales—and thus to serve as support for the subsequently promulgated "unitary business" concept as an alternative basis for justifying taxability—is unwarranted. The latter interpretation has no basis in the statutory tax exemption and would tend to undermine rather than implement its goal. In addition, of course, such supposed alternative ground was unnecessary to the court's finding of taxability in view of the number, scope and character of salvage sales of which the liquidation sale was the last.

As read by the Board, regulation 1595, subdivision (a)(3), clearly conflicts with section 6006.5, subdivision (a), because the former disqualifies

from tax exemption sales which would otherwise be exempt under the latter any time the seller is a so-called "unitary business" also engaged in some nonexempt sales. For that reason alone, the regulation is invalid and cannot be used to deny plaintiffs their tax exemption.

In addition, however, we discern that a subsequent portion of the same regulation *also* would exempt the sales at issue from sales tax. For even if it is assumed, arguendo, that each hospital's sale here would properly be denied the exemption under subdivision (a)(3) of regulation 1595, it would also seem quite clear that subdivision (d) of the regulation *excepts* such sale from that denial. The latter provision declares, in relevant part: "A person engaged in a service enterprise is not liable for sales tax measured by his receipts from a retail sale of equipment used in the conduct of the service enterprise" even if the sale follows a series of trade-ins, and provided the sale is not preceded by two or more substantial similar sales within a one-year period. It is clear that each hospital here *was* "engaged in a service enterprise" and that the equipment sold *was* "used in the conduct of the service enterprise," so that the sales are not taxable under the express exception language of subdivision (d). (See Cal. Admin. Code, tit. 18, regs. 1501, 1503, subd. (a)(1).) Thus, even if regulation 1595 is found to be consistent with section 6006.5 and therefore valid—contrary to our conclusion—plaintiffs' sales still would be tax-exempt under subdivision (d) of the regulation.

A consideration of but one of the consequences of the Board's interpretation of the sales tax laws in this context demonstrates the unsound and arbitrary nature of that interpretation. Apparently, under the Board's view, a hospital could sell all of its equipment and furnishings *without* incurring the sales tax imposed here if it simply eliminated the sale of cafeteria meals and of nonprescription medicines and supplies to *nonpatients*. (See Cal. Admin. Code, tit. 18, regs. 1503, subd. (a), 1591, subds. (a)(1), (a)(3), 1603, subd. (1).) Because, instead, the hospitals here accommodated nonpatients by making a small number of taxable sales to them, it is asserted that they must therefore pay not only the few hundred dollars sales tax attributable to the sale of equipment used in those sales—which hospitals concede—but also in excess of $15,000 each in tax on the *otherwise exempt* hospital equipment. Such a statutory construction has the tail wagging the dog.

The Board's attempt to reconcile regulation 1595 with section 6006.5 is unpersuasive. ■ The statute was designed expressly to exempt from the sales tax a one-time sale of tangible personal property which is not held or used by a seller in the course of activities for which it is required to hold a

seller's permit. ██ The liquidation sale of each hospital here was such a sale. Because it abridges the taxpayer's statutory right to a tax exemption for an "occasional sale," the regulation is invalid.

The judgment is affirmed.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

Appellant's petition for a rehearing was denied June 13, 1984.