TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-1007 |
| of | : | |
| | : | May 11, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE DANIEL E. BOATWRIGHT, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a clinical psychologist holding membership on the medical staff of a health facility designated as an intermediate care facility for the developmentally disabled, an intermediate care facility for the developmentally disabled - habilitative, or a psychiatric health facility, order temporary restraint and seclusion to protect the patient from injury to self or others?

CONCLUSION

A clinical psychologist holding membership on the medical staff of a health facility may, subject to the rules of the facility, and in order to protect the patient from injury to self or others, order temporary restraint but not seclusion in the case of an intermediate care facility for the developmentally disabled or intermediate care facility for the developmentally disabled - habilitative, and both restraint and seclusion in the case of a psychiatric health facility.

ANALYSIS

Under the provisions of Health and Safety Code sections 1250-1339.61,[1] any person, political subdivision of the state, or governmental agency intending to operate a health facility is

_____

[1]All references hereafter to the Health and Safety Code are by section number only.

required to apply for and obtain a license from the State Department of Health Services ("Department"). A "health facility" includes "any facility, place, or building that is organized, maintained, and operated for the diagnosis, care, prevention, and treatment of human illness, physical or mental, including convalescence and rehabilitation and including care during and after pregnancy, or for any one or more of these purposes, for one or more persons, to which the persons are admitted for a 24-hour stay or longer . . . ." (§ 1250.)

In connection with the execution of its duty to license and regulate health facilities, the Department is authorized to adopt and enforce rules and regulations. The Department "shall adopt, amend, or repeal . . . any reasonable rules and regulations as may be necessary or proper to carry out the purposes and intent of [§§ 1250-1339.61] and to enable the state department to exercise the powers and perform the duties conferred upon it by [§§ 1250-1339.61] not inconsistent with any statute of this state . . . ." (§ 1275, subd. (a).)

The present inquiry concerns the Department's references to clinical psychologists in three of its administrative regulations, one governing intermediate care facilities for the developmentally disabled (Cal. Code Regs., tit. 22, § 76327),[2] one governing intermediate care facilities for the developmentally disabled - habilitative (Reg. 76867), and one governing psychiatric health facilities (Reg. 77103). Specifically, we are asked whether a clinical psychologist holding membership on the medical staff of a health facility may be given authority pursuant to these regulations to order temporary restraint and seclusion to protect a patient from injury to self or others. We conclude that the regulations are valid.

Subdivision (a) of regulation 76327 provides in part:

"Restraints shall only be used as measures to protect the client from injury to self or others and only upon a physician's or clinical psychologist's written or telephone order."

Subdivision (a) of regulation 76867 provides in part:

"Restraints shall only be used as temporary emergency measures to protect the client from injury to self or others and only upon a written or telephone order of a physician or clinical psychologist."

Regulation 77103 provides in part as follows:

"(a) Behavioral restraint and seclusion shall only be used as a measure to protect the patient from injury to self or others.

"(b) Behavioral restraint and seclusion shall only be used upon a physician's or clinical psychologist's written or verbal order, except under emergency circumstances."

---

[2]All references hereafter to title 22 of the California Code of Regulations are by regulation number only.

It is contended that these regulations are in conflict with the scope of practice of a psychologist as defined by the Legislature and hence are invalid to that extent. In particular, it is argued that the authority to order restraint and seclusion does not fall within the practice of psychology as described and limited in Business and Professions Code section 2903, which states:

> "No person may engage in the practice of psychology, or represent himself to be a psychologist, without a license granted under this chapter, except as otherwise provided in this chapter. The practice of psychology is defined as rendering or offering to render for a fee to individuals, groups, organizations or the public any psychological services involving the application of psychological principles, methods, and procedures of understanding, predicting, and influencing behavior, such as the principles pertaining to learning, perception, motivation, emotions, and interpersonal relationships; and the methods and procedures of interviewing, counseling, psychotherapy, behavior modification, and hypnosis; and of constructing, administering, and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotions, and motivations.

> "The application of such principles and methods includes, but is not restricted to: diagnosis, prevention, treatment, and amelioration of psychological problems and emotional and mental disorders of individuals and groups.

> "Psychotherapy within the meaning of this chapter means the use of psychological methods in a professional relationship to assist a person or persons to acquire greater human effectiveness or to modify feelings, conditions, attitudes and behaviors which are emotionally, intellectually, or socially ineffectual or maladjustive.

> "As used in this chapter, `fee' means any charge, monetary or otherwise, whether paid directly or paid on a prepaid or capitation basis by a third party, or a charge assessed by a facility, for services rendered."

Two other statutes are relevant to the issue of a psychologist's scope of practice. Business and Professions Code section 2903.1 states:

> "A psychologist licensed under this chapter may use biofeedback instruments which do not pierce or cut the skin to measure physical and mental functioning."

Business and Professions Code section 2904 provides:

> "The practice of psychology shall not include prescribing drugs, performing surgery or administering electroconvulsive therapy."

In our view, however, the issue presented for consideration does not concern a psychologist's scope of practice,[3] but rather whether the Department may, under the statutory scheme, enact regulations authorizing and limiting the imposition of restraint and seclusion by anyone within a health facility, not as a modality of treatment but in order to protect the patient from injury to self or others. It is in this context, then, that we examine Regulations 76327, 76867, and 77103.

Preliminarily we note that a clinical psychologist may serve as a member of the medical staff of a health facility. Subdivision (a) of section 1316.5 provides in part:

"The rules of a health facility may enable the appointment of clinical psychologists on such terms and conditions as the facility shall establish. In such health facilities, clinical psychologists may hold membership and serve on committees of the medical staff and carry professional responsibilities consistent with the scope of their licensure and their competence, subject to the rules of the health facility.

"Nothing in this section shall be construed to require a health facility to offer a specific health service or services not otherwise offered. If a health service is offered by a health facility with both licensed physicians and surgeons and clinical psychologists on the medical staff, which both licensed physicians and surgeons and clinical psychologists are authorized by law to perform, such service may be performed by either, without discrimination." (See also § 1275, subd. (f); *California Assn. of Psychology Providers* v. *Rank*, *supra*, 51 Cal.3d 1.)[4]

When reviewing the validity of state administrative regulations, the Supreme Court has applied a uniform set of rules which we summarized in 72 Ops.Cal.Atty.Gen. 173, 179-180 (1989) as follows:

". . . `Where a statute empowers an administrative agency to adopt regulations, such regulations "must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose."' (*Ontario Community Foundation, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816.) `[T]here is no agency discretion to promulgate a regulation which is inconsistent with the governing statute.' (*Woods* v.

---

[3]Insofar as the ordering of restraint or seclusion may be deemed an element of treatment, the Supreme Court in *California Assn. of Psychological Providers* v. *Rank* (1990) 51 Cal.3d 1, 21-22, held that ". . . under California law a hospital that admits clinical psychologists to its staff may permit such psychologists to take primary responsibility for the admission, diagnosis, treatment, and discharge of their patients. The 1983 Department regulations requiring a psychiatrist to supervise diagnosis and treatment of all admitted mental patients are therefore invalid."

[4]A clinical psychologist is defined as "a psychologist licensed by this state and (1) who possesses an earned doctorate degree in psychology from an educational institution meeting the criteria of subdivision (c) of Section 2914 of the Business and Professions Code and (2) has not less than two years clinical experience in a multidisciplinary facility licensed or operated by this or another state or by the United States to provide health care, or, is listed in the latest edition of the National Register of Health Service Providers in Psychology, as adopted by the Council for the National Register of Health Service Providers in Psychology." (§ 1316.5, subd. (c).)

*Superior Court* (1981) 28 Cal.3d 668, 678.) `Administrative regulations that violate acts of the Legislature are void and no protestations that they are merely an exercise of administrative discretion can sanctify them.' (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 737.) `Administrative regulations that *alter or amend that statute or enlarge or impair its scope* are void and courts not only may, but it is their obligation to strike down such regulations.' (*Ontario Community Foundation, Inc.* v. *State Bd. of Equalization*, *supra*, 35 Cal.3d at 816-817, emphasis added.) `It is fundamental that an administrative agency may not usurp the legislative function, no matter how altruistic its motives are.' (*Agricultural Labor Relations Board* v. *Superior Court* (1976) 16 Cal.3d 392, 419.)" (See also 77 Ops.Cal.Atty.Gen. 153, 155 (1994).)

Looking first at Regulation 77103 governing psychiatric health facilities, we find that it authorizes both behavioral restraint and seclusion. "Behavioral restraint," as distinguished from "treatment restraint" which is applied during a medically prescribed treatment or diagnostic procedure (Reg. 77033), is directed to a specific maladaptive behavior. However, no physical restraint with locking devices may be used in a psychiatric health facility unless approved by the State Fire Marshal. (Reg. 77101, subd. (a).) The term "seclusion" means the isolation of a patient in a locked area for the purpose of modifying a behavior. (Reg. 77029.) Accordingly, as authorized by the Department, a clinical psychologist may, subject to several conditions and limitations (Reg. 77103), order behavioral restraint and seclusion in a psychiatric health facility in order to protect a patient from injury to self or others.

Regulation 77103 falls plainly within the scope and language of section 1275.1, subdivision (f), authorizing the Department to adopt standards in connection with psychiatric health facilities:

"Standards for involuntary patients shall include provisions to allow for restraint and seclusion of patients. Such standards shall provide for adequate safeguards for patient safety and protection of patient rights."

In contrast, the regulations governing intermediate health facilities for the developmentally disabled and intermediate care facilities for the developmentally disabled -habilitative provide that restraint but not seclusion may be employed. (Regs. 76327, 76867.) The term "restraint" connotes control of a patient's behavior or activity by physical means. (Regs. 76147, 76827.) However, no restraint with locking devices or placement in a locked room is permitted. (Regs. 76327, 76867.) Accordingly, as authorized by the Department, a clinical psychologist may, subject to several conditions and limitations (Regs. 76327, 76329, 76867, 76868), order physical restraint but not seclusion in either category of intermediate care facility for the developmentally disabled in order to protect the patient from injury to self or others.

Unlike the express statutory provision pertaining to psychiatric health facilities (§ 1275.1, subd. (f)), no concomitant legislative reference respecting either category of intermediate care facilities for the developmentally disabled authorizes or prohibits the promulgation of regulations governing restraint and seclusion. Moreover, no statutory reference concerning the Department's

designation of personnel authorized to order restraint and seclusion may be found in connection with any of the three subject health facilities.

Nevertheless, as observed in an analogous situation in *Ferdig* v. *State Personnel Board* (1969) 71 Cal.2d 96, 106, regarding the implied administrative authority of the State Personnel Board:

"We conclude, therefore, that when the matter was brought to its attention, the Board had jurisdiction to inquire into and review the certification as to veterans' reference credits made by the Department of Veterans Affairs and having determined that appellant was not entitled to such credits, to take the corrective action which it did by revoking appellant's appointment. While this jurisdiction does not appear to have been conferred upon the Board in so many words by the express or precise language of constitutional or statutory provision, there can be no question that it is implicit in the constitutional and statutory scheme which empowers the Board to administer and enforce the civil service laws." (Cf. 72 Ops.Cal.Atty.Gen., *supra*, 180.)

Similarly, in connection with the Department's authority to license and regulate health facilities, the adoption of regulations governing the involuntary restraint or seclusion of patients who are in imminent danger of injury to self or others, including the designation of professional staff authorized to order restraint or seclusion in a particular case, are patently necessary and proper to the carrying out of the purposes and intent of the health facilities statutory scheme. (§ 1275, subd. (a).)

Moreover, it is well settled that the administrative construction of a statute by those charged with its enforcement is entitled to great weight, and the courts will not depart from such construction unless it is clearly erroneous or unauthorized. (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 460; 77 Ops.Cal.Atty.Gen. 159, 162 (1994).) We may also assume here a legislative confirmation of the Department's construction of the governing statutes contained in its regulations as to matters unmodified by subsequent amendatory legislation. (See *Coca-Cola Co.* v. *State Bd. of Equal.* (1945) 25 Cal.2d 918, 922-923; 64 Ops.Cal.Atty.Gen. 74, 81 (1981).) In this regard, Regulations 76327, 76867, and 77103 were adopted in 1983, 1984, and 1987, respectively. Insofar as each of these provisions authorizes both physicians and clinical psychologists to order restraint or seclusion, such administrative construction was left unmodified by subsequent legislation in the area governing the Department's powers to regulate health facilities. (§§ 1275 [Stats. 1987, ch. 1171, § 1], 1275.1 [Stats. 1988, ch. 1047, § 2].)[5]

---

[5]It has been suggested that the regulations under consideration herein have been "superseded" by the Federal Nursing Home Reform Law which requires that a medicaid or medicare regulated nursing facility allow restraint or seclusion only upon the written order of a physician, dentist, podiatrist, optometrist, or chiropractor. (42 U.S.C. §§ 1395i-3(c)(1)(A), 1396r(c)(1)(A), 1395x(r).) The federal provisions pertain to skilled nursing facilities and nursing facilities respectively, not institutions primarily for the care and treatment of mental diseases. (42 U.S.C. §§ 1395i-3(a), 1396r(a).) Accordingly, the federal law would not apply to psychiatric health facilities or to facilities for the developmentally disabled. "Developmental disability" means a "disabling condition attributable to mental retardation, cerebral palsy, epilepsy, autism or other neurologically handicapping condition found to be closely related to mental retardation or to require treatment similar to that required for persons with mental retardation. . . ." (Reg. 76047.)

In summary, the Department has both designated and limited the authority of physicians and clinical psychologists to order restraint and seclusion in health facilities regulated by it. In our view it cannot be said that the Department's regulations to protect patients from injuring themselves or others alter, amend, enlarge, or impair the scope of the statutory scheme. (See *Ontario Community Foundation, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816-817; 72 Ops.Cal.Atty.Gen., *supra*, 179-180.)

The following distinction, however, must be noted. As previously quoted, subdivision (a) of section 1316.5 provides that "[i]n such health facilities, clinical psychologists may . . . carry professional responsibilities consistent with the scope of their licensure and their competence, *subject to the rules of the health facility*." (Emphasis added.) We believe that the Legislature used the term "professional responsibilities" in a general sense as distinguished from only those responsibilities which fall strictly within the scope of licensure as defined in Business and Professions Code section 2903. This would include, for example, the responsibility respecting the ordering of restraint or seclusion. Hence, to the extent that the rules of a facility are more restrictive than the Department's regulations, the statutorily authorized local facility rules would prevail. (See *Ontario Community Foundation, Inc.* v. *State Bd. of Equalization*, *supra*, 35 Cal.3d at 816-817; 72 Ops.Cal.Atty.Gen., *supra*, 179-180.)[6]

Accordingly, it is concluded that a clinical psychologist holding membership on the medical staff of a health facility may, subject to the rules of the facility, and in order to protect the client from injury to self or others, order temporary restraint but not seclusion in the case of an intermediate care facility for the developmentally disabled or intermediate care facility for the developmentally disabled - habilitative and both restraint and seclusion in the case of a psychiatric health facility.

\* \* \* \* \*

---

[6]We do not mean to suggest that any such health facility rule may be applied in a discriminatory manner against clinical psychologists. (See § 1316.5, subd. (a).)