Filed 6/30/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re FRANK RAY CHAVEZ<br><br>on Habeas Corpus. | H046921<br>(Santa Clara County<br>Super. Ct. No. C9804583) |

Appellant California Department of Corrections and Rehabilitation (CDCR) challenges the superior court's order granting respondent Frank Ray Chavez's habeas corpus petition and ordering the CDCR to grant early parole consideration to Chavez under Proposition 57. The CDCR contends that the superior court erred in ruling invalid the CDCR's regulation, which excluded from eligibility for early parole consideration under Proposition 57 any inmate who, like Chavez, had suffered a prior conviction for a sexual offense that required sex offender registration. The superior court, relying on *In re Gadlin* (2019) 31 Cal.App.5th 784 (*Gadlin*), review granted May 15, 2019, S254599, concluded that the CDCR's regulation was inconsistent with Proposition 57 and therefore did not justify the CDCR's refusal to grant Chavez early parole consideration. The CDCR challenges that conclusion on appeal, but we agree with the superior court and affirm.

I.      **BACKGROUND**

In 1994, Chavez was convicted by plea of assault with intent to commit rape (Pen. Code, § 220),[1] a sex offense requiring sex offender registration under section 290 (§ 290, subd. (c)).[2] He was sentenced to nine years in state prison. In 1999, Chavez

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] The section 220 offense was also a violent felony. (§ 667.5, subd. (c)(15).)

pleaded guilty to failing to register as a sex offender (former § 290, subd. (g)(2); current § 290.018, subd. (b)) and admitted five strike (§§ 667, subds. (b)-(i), 1170.12) allegations.[3]  Chavez was sentenced to a Three Strikes term of 25 years to life for the failure to register offense.[4]

In February 2018, Chavez's request to be granted early parole consideration under Proposition 57 was denied, and he was informed that his initial parole consideration proceeding was tentatively scheduled for July 2021.

In May 2018, Chavez filed a petition for a writ of habeas corpus raising numerous issues, including his challenge to the CDCR's refusal to grant him early parole consideration under Proposition 57.  The superior court denied his petition as to the other issues, but in October 2018 it issued an order to show cause (OSC) on the Proposition 57 issue.

In March 2019, the court granted Chavez's petition as to the Proposition 57 issue and ordered the CDCR to "provide Chavez with early parole consideration within 60 days" of its order.  On May 1, the CDCR asked the superior court to stay its order pending appeal.  The court denied the request.  On May 9, the CDCR filed a notice of appeal from the court's order.  On May 23, we issued a temporary stay, and on October 2, we issued a writ of supersedeas staying the superior court's order pending final resolution of this appeal.

---

[3] This offense would have been punishable by a maximum prison term of three years if Chavez had not been sentenced under the Three Strikes alternative sentencing scheme.  (Former § 290, subd. (g)(2); current § 290.018, subd. (b).)

[4] When he was sentenced in September 2000, Chavez was awarded 848 days of credit against his term.

## II. ANALYSIS

### A. *Proposition 57*

Proposition 57, which took effect in November 2016, is entitled "The Public Safety and Rehabilitation Act of 2016." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 1, p. 141 (Voter Information Guide).) Its express purposes are: "1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles. [¶] 5. Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (*Id.*, § 2, p. 141.)

One of the provisions added by Proposition 57 was section 32 of Article I of the California Constitution.[5] Section 32 provides: "(a) The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law: [¶] (1) Parole Consideration: Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense. [¶] (A) For purposes of this section only, the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence.[6]

---

[5] All further references to section 32 are to this provision.

[6] The CDCR's regulations further defined "primary offense" under section 32: " 'Primary offense' means the single crime for which any sentencing court imposed the longest term of imprisonment, excluding all enhancements, alternative sentences, and consecutive sentences. For purposes of determining the primary offense under this section, the term of imprisonment for inmates sentenced to a life term under an alternative sentencing scheme for a nonviolent crime shall be the maximum term applicable by statute to the underlying nonviolent offense." (Cal. Code Regs., tit. 15, § 3495, subd. (d).) Chavez was sentenced to a life term under the Three Strikes

3

[¶] (2) Credit Earning: The Department of Corrections and Rehabilitation shall have authority to award credits earned for good behavior and approved rehabilitative or educational achievements. [¶] (b) The Department of Corrections and Rehabilitation shall adopt regulations in furtherance of these provisions, and the Secretary of the Department of Corrections and Rehabilitation shall certify that these regulations protect and enhance public safety." (Cal. Const., Art. I, § 32.) Proposition 57 provided that "[t]his act shall be liberally construed to effectuate its purposes." (Voter Information Guide, *supra*, text of Prop. 57, § 9, p. 146; see also *id*. § 5, p. 145 ["This act shall be broadly construed to accomplish its purposes"].)

### B.    The CDCR's Regulations

After Proposition 57 took effect, the CDCR adopted regulations implementing early parole consideration for inmates under section 32. "When defining those inmates who will be eligible for early parole consideration, CDCR's rulemaking took a different approach than the constitutional provision—focusing less on the nature of an offense committed by a person (i.e., 'a nonviolent felony offense') and more on the person who commits one or more crimes." (*In re Mohammad* (2019) 42 Cal.App.5th 719, 723, review granted Feb. 19, 2020, S259999.) The CDCR's regulations provide that an indeterminately-sentenced inmate convicted of a nonviolent offense is eligible for early parole consideration under section 32 and generally is entitled to a parole consideration hearing within one year of January 1, 2019.[7] (Cal. Code Regs., tit. 15, §§ 2449.32, 3496, 3497.) However, the CDCR's regulations also provide that "an

---

alternative sentencing scheme, but his nonviolent offense, his "primary offense," otherwise had a maximum term of three years.

[7] The CDCR's original regulations under section 32 entirely excluded those serving indeterminate terms. (*In re Edwards* (2018) 26 Cal.App.5th 1181, 1188 (*Edwards*).) Those regulations were found to be invalid because they conflicted with section 32's intent (*Edwards*, *supra*, at p. 1191), and the CDCR subsequently enacted new regulations that did not exclude all of those serving indeterminate terms. (*Gadlin*, *supra*, 31 Cal.App.5th at p. 787.)

inmate is not eligible for a parole consideration hearing by the Board of Parole Hearings under [Cal. Code Regs., tit. 15, § 2449.32 (early parole consideration under section 32)] if the inmate is convicted of a sexual offense that currently requires or will require registration as a sex offender under the Sex Offender Registration Act, codified in Sections 290 through 290.024 of the Penal Code." (Cal. Code Regs., tit. 15, § 3496, subd. (b).) The CDCR enacted this restrictive regulation because, in its view, " 'these sex offenses demonstrate a sufficient degree of violence and represent an unreasonable risk to public safety to require that sex offenders be excluded from nonviolent parole consideration.' " (*Gadlin*, *supra*, 31 Cal.App.5th at p. 788.)

### C.    *Standard of Review*

"Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11342.2.)

"In determining the proper interpretation of a statute and the validity of an administrative regulation, the administrative agency's construction is entitled to great weight, and if there appears to be a reasonable basis for it, a court will not substitute its judgment for that of the administrative body. . . . [¶] On the other hand, . . . '*there is no agency discretion to promulgate a regulation which is inconsistent with the governing statute*.' " (*Ontario Community Foundations*, *Inc. v. State Bd. of Equalization* (1984) 35 Cal.3d 811, 816.) "[T]he burden of proof is on the party challenging the regulation. 'The agency's action comes before the court with a presumption of correctness and regularity, which places the burden of demonstrating invalidity upon the assailant.'" (*Credit Ins. Gen. Agents Assn. v. Payne* (1976) 16 Cal.3d 651, 657.)

### D. Analysis

The CDCR contends that its regulation excluding sex offenders[8] is valid because it is consistent with the CDCR's understanding of the voters' intent in enacting section 32. The CDCR maintains that "subdivision (a)(1) of Section 32 has an undefined scope," and that, looking beyond section 32's "text alone" to the "ballot pamphlet," it could reasonably conclude that "the voters' intent" was "that sex offenders be excluded from Proposition 57's nonviolent parole process." The CDCR believes that "Proposition 57's intent was to implement parole reform for nonviolent inmates who are not sex offenders."[9]

"The general principles that govern interpretation of a statute enacted by the Legislature apply also to an initiative measure enacted by the voters. [Citation.] Thus, our primary task here is to ascertain the intent of the electorate [citation] so as to effectuate that intent [citation]. [¶] We look first to the words of the initiative measure, as they generally provide the most reliable indicator of the voters' intent. [Citations.] Usually, there is no need to construe a provision's words when they are clear and unambiguous and thus not reasonably susceptible of more than one meaning. [Citations.] . . . [¶] A literal construction of an enactment, however, will not control when such a construction would frustrate the manifest purpose of the

---

[8] Our references to "sex offenders" in this opinion are to those with *prior* sex offenses requiring registration. We express no opinion on the validity of any CDCR regulation to the extent that it excludes those with *current* sex offenses from early parole consideration. (Compare *Gadlin*, *supra*, 31 Cal.App.5th at pp. 790-791 (concurring opn. of Baker, Acting P.J.) [CDCR may validly exclude those with current sex offenses] with *Alliance for Constitutional Sex Offense Laws v. Department of Corrections & Rehabilitation* (2020) 45 Cal.App.5th 225, 234-235 (*Alliance*), review granted May 27, 2020, S261362 [CDCR's exclusion of current sex offenders is invalid].)

[9] We deny the CDCR's request for judicial notice of materials related to the federal court's orders because we find those materials irrelevant to the issues before us.

enactment as a whole. [Citations.] . . . In determining the purpose of an initiative measure, we consider the analysis and arguments contained in the official election materials submitted to the voters." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 978-979.)

The key questions we must ask are whether the CDCR's exclusion of sex offenders is consistent or inconsistent with section 32's provisions and whether the CDCR could reasonably conclude that its exclusion of sex offenders was "in furtherance of" section 32's "provisions."

We begin with the relevant express provisions of section 32. Section 32 provides that "*[a]ny person* convicted of a nonviolent felony offense and sentenced to state prison *shall* be eligible for parole consideration after completing the full term for his or her primary offense." This provision broadly applies to "[a]ny" inmate convicted of a nonviolent felony and, because it uses "shall," is explicitly mandatory. It contains no suggestion that it is restricted to those lacking certain prior convictions. The fact that Proposition 57 expressly requires that its provisions "shall be *liberally* construed to effectuate its purposes" rebuts any possible inference that the voters intended for this *broad* mandate to be *restricted* by the CDCR's enactment of regulations deeming ineligible some of those identified as eligible in section 32. (Voter Information Guide, *supra*, text of Prop. 57, § 9, p. 146, italics added.) Accordingly, we conclude that the CDCR's restrictive regulation is *inconsistent* with section 32's express provisions.

The CDCR claims otherwise and points to section 32's express authorization for the CDCR to "adopt regulations in furtherance of [section 32's] provisions" and to "certify that these regulations protect and enhance public safety." We disagree. The CDCR could not have reasonably concluded that its *restrictive* regulation was "in furtherance" of the *broad* mandate that the voters had explicitly required to be *liberally* construed.

7

The CDCR claims that the words "[a]ny person convicted of a nonviolent felony offense" is ambiguous and that we should examine arguments in the Voter Information Guide for evidence of the voters' intent. It is true that, even where provisions are clear and unambiguous, "the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. . . . Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] . . . . These rules apply as well to the interpretation of constitutional provisions." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) The flaw in the CDCR's argument is that the voters expressly stated their intent: a broad mandate that they required to be liberally construed. This express intent precludes reliance on ballot arguments to support a restrictive interpretation of that broad mandate.[10]

---

[10] We decline to resort to the Voter Information Guide to determine whether it contains indications that are inconsistent with the voters' *express intent*. Even if we did, we would find no support for the CDCR's claim. The Voter Information Guide contained the Legislative Analyst's description of Proposition 57's early parole consideration provisions. This description said nothing about sex offenders, but it did mention a federal court order that was in place: "[C]ertain individuals who have not been convicted of violent felonies are currently eligible for parole consideration after they have served half of their prison sentence. This was one of several measures put in place by a federal court to reduce the state's prison population." (Voter Information Guide, *supra*, Legislative Analyst's analysis, p. 54.)

The Voter Information Guide also contained the arguments for and against Proposition 57, which did mention sex offenders. The opponents of Proposition 57 argued that "[t]hose previously convicted of MURDER, RAPE and CHILD MOLESTATION would be eligible for early parole." (Voter Information Guide, *supra*, rebuttal to argument in favor of Prop. 57, p. 58.) The opponents also argued that "at least 16,000 dangerous criminals, including those previously convicted of murder and rape, would be eligible for early release." (*Id*., argument against Prop. 57, p. 59, italics omitted.) The proponents' only response to these arguments was their argument that Proposition 57 "does NOT and will not change the federal court order that excludes sex offenders, as defined in Penal Code 290, from parole." (*Id*., rebuttal to argument in favor of Prop. 57, p. 59.)

8

The Second District Court of Appeal rejected a similar argument in *Gadlin*. It concluded that section 32's express references to "convicted," "sentenced," "felony offense," "primary offense," and "term" "make clear that early parole eligibility must be assessed based on the conviction for which an inmate is now serving a state prison sentence (the current offense), rather than prior criminal history." (*Gadlin*, *supra*, 31 Cal.App.5th at p. 789; see also *In re Schuster* (2019) 42 Cal.App.5th 943, review granted Feb. 19, 2020, S260024 [agreeing with *Gadlin*].) The Third District Court of Appeal in *Alliance* also rejected the CDCR's restrictive view of section 32's broad mandate. "Permitting the Department to restrict the number of eligible inmates due to perceived danger to public safety does not broadly construe the stated goals of the proposition. For example, restricting the number of inmates eligible for early parole consideration would not save money by reducing wasteful spending on prisons. Rather, it would require continued spending to house nonviolent sex offenders otherwise eligible for parole. The Department's regulation would also not help prevent federal courts from indiscriminately releasing prisoners due to state prisons' overcrowding; the Department's decision to render ineligible otherwise eligible inmates impedes the goal of reducing the prison population." (*Alliance*, *supra*, 45 Cal.App.5th at pp. 234-235.)

We conclude that section 32's broad mandate is inconsistent with the CDCR's restrictive regulation barring early parole consideration for those with prior convictions for sex offenses that require sex offender registration and that the CDCR could not have reasonably concluded that its restrictive regulation was "in furtherance" of a broad mandate that the voters had expressly required to be liberally construed. Consequently, the superior court correctly concluded that Chavez was entitled to early parole consideration under section 32.

## III. DISPOSITION

The order is affirmed.

9

_____

ELIA, J.

WE CONCUR:


_____

PREMO, Acting P.J.


_____

BAMATTRE-MANOUKIAN, J.


*In re Chavez on Habeas Corpus*
H046921

Trial Court:                                   Santa Clara County Superior Court
                                               Superior Court No.:  C9804583


Trial Judge:                                   Honorable Daniel T. Nishigaya


Counsel for Respondent:                        Joseph Vincent Doyle
FRANK RAY CHAVEZ


Counsel for Appellant:                         Xavier Becerra
DEPARTMENT OF CORRECTIONS                       Attorney General of California
AND REHABILITATION
                                               Phillip J. Lindsay
                                               Senior Assistant Attorney General

                                               Sarah J. Romano
                                               Supervising Deputy Attorney General

                                               Michael Joseph Lagrama
                                               Deputy Attorney General

*In re Chavez on Habeas Corpus*
H046921